Case 4:21-cv-00435   Document 17   Filed on 03/30/22 in TXSD   Page 1 of 17

United States District Court
Southern District of Texas
**ENTERED**
March 30, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re UNIT CORPORATION, *et al.*, § § | |
| Debtors. § § § | CIVIL ACTION NO. 4:21-CV-435 |
| § § | |
| MICHAEL GILMORE, § § § | |
| Appellant. § | |

## MEMORANDUM OPINION AND ORDER

This is a bankruptcy appeal. The appellant sought to file proofs of claim after the general bar date set by the bankruptcy court, and the bankruptcy court refused to allow the late-filed proofs of claim. The Court **AFFIRMS** the bankruptcy court's judgment.[1]

### I.   BACKGROUND FACTS

The appellant, Michael Gilmore ("Gilmore"), obtained a $9 million jury verdict in Texas state court against one of the bankruptcy debtors, Unit Drilling Company ("UDC"), in a personal injury case. (Dkt. 9-1 at pp. 123–30). Gilmore was represented by Richard W. Hunnicutt, III ("Hunnicutt"). (Dkt. 9-1 at p. 105). In October of 2019, the verdict in Gilmore's favor was reversed by the Thirteenth Court of Appeals of Texas and remanded for a new trial. *See Unit Drilling Company v. Gilmore*, No. 13-17-00594-CV, 2019 WL 5089763 (Tex. App.—Corpus Christi Oct. 10, 2019, no pet.). The case has not been retried.

---

[1] The relevant bankruptcy case number is 20-32740, filed in the Southern District of Texas, Houston Division.

On May 22, 2020, UDC and several affiliated entities (collectively "Unit") filed for bankruptcy. *See* Southern District of Texas bankruptcy case number 20-32740 at docket entry 1. On June 1, 2020, UDC and one of its fellow bankruptcy debtors, Unit Corporation, electronically filed a suggestion of bankruptcy in Gilmore's state-court case. (Dkt. 11 at p. 9). Unit Corporation was also a defendant in Gilmore's state-court case.

On June 19, 2020, the bankruptcy court entered an order setting a general bar date of July 17, 2020 ("the General Bar Date").[2] *See* Southern District of Texas bankruptcy case number 20-32740 at docket entry 170, page 2. A court-appointed claims and noticing agent mailed a notice of the General Bar Date to Hunnicutt's law firm, and Hunnicutt's law firm received the notice on July 8, 2020. *See* Southern District of Texas bankruptcy case number 20-32740 at docket entry 485, page 29. Gilmore did not file anything with the bankruptcy court before the General Bar Date.

On August 6, 2020, the bankruptcy court confirmed Unit's reorganization plan. *See* Southern District of Texas bankruptcy case number 20-32740 at docket entry 340, pages 35–36. The reorganization plan contained language disallowing and expunging "[a]ny Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed, and for which no Proof of Claim is or has been timely Filed[.]" *See* Southern District of Texas bankruptcy case number 20-32740 at docket entry 340, page 83. UDC listed Gilmore's claim on its schedule as contingent, unliquidated, and disputed. (Dkt. 11

---

[2] A general bar date is "the date by which all creditors must file their proof of claim in order to be treated as a creditor." *In re DLH Master Land Holding, L.L.C.*, 464 Fed. App'x 316, 317 n.1 (5th Cir. 2012).

at p. 103). *See* Southern District of Texas bankruptcy case number 20-32740 at docket entry 191, page 44.

On August 24, 2020, a month after the General Bar Date, Gilmore filed a motion for relief from the automatic bankruptcy stay. *See* Southern District of Texas bankruptcy case number 20-32740 at docket entry 369. At the same time, Gilmore sent proofs of claim to the court-appointed claims and noticing agent; those proofs of claim were dated August 21, 2020; postmarked August 27, 2020; and received by the claims and noticing agent on September 2, 2020 or September 3, 2020. (Dkt. 11 at pp. 42, 44, 55, 56, 58, 69, 70, 72, 83, 84, 86, 97). Hunnicutt signed both the motion and the proofs of claim as counsel for Gilmore. (Dkt. 11 at pp. 44, 58, 72, 86). *See* Southern District of Texas bankruptcy case number 20-32740 at docket entry 369, page 6.

Gilmore then retained Joyce W. Lindauer ("Lindauer"), who filed a notice of appearance in the bankruptcy court on September 22, 2020. *See* Southern District of Texas bankruptcy case number 20-32740 at docket entry 407. On September 25, 2020, a month after he mailed his proofs of claim and 70 days after the General Bar Date, Gilmore filed a motion to allow late-filed proofs of claim in the bankruptcy court in which he argued that his failure to submit his proofs of claim before the General Bar Date resulted from excusable neglect. *See* Southern District of Texas bankruptcy case number 20-32740 at docket entry 410.

The bankruptcy court held an evidentiary hearing on Gilmore's motion to allow late-filed proofs of claim.³ At the hearing, Lindauer called Gilmore and Hunnicutt as witnesses. Hunnicutt testified that, because of COVID-related remote work protocols and mailroom problems at his firm, he did not receive the mailed notice of the General Bar Date until July 22, 2020, five days after the General Bar Date had passed. *See* Southern District of Texas bankruptcy case number 20-32740 at docket entry 485, pages 27–30. However, Hunnicutt admitted that, in June of 2020, he "knew about" the suggestion of bankruptcy that Unit filed in Gilmore's state-court case. *See* Southern District of Texas bankruptcy case number 20-32740 at docket entry 485, pages 32–33. Hunnicutt also testified that he told Gilmore about the bankruptcy "shortly after June 5th when [Hunnicutt] would have received the State Court filing of a suggestion of bankruptcy." *See* Southern District of Texas bankruptcy case number 20-32740 at docket entry 485, page 48.

The bankruptcy court faced evident difficulty determining precisely what Hunnicutt did and when he did it after he learned of Unit's bankruptcy on June 5, 2020; and the bankruptcy court eventually concluded that Hunnicutt had "zero" credibility because of an "inability to be truthful[.]" *See* Southern District of Texas bankruptcy case number 20-32740 at docket entry 485, pages 38, 42. At one point, Hunnicutt testified that he instructed an associate "to start working on a proof of claim" immediately after he got the suggestion

---

³ Gilmore withdrew his motion for relief from the bankruptcy stay at the hearing. *See* Southern District of Texas bankruptcy case number 20-32740 at docket entry 485, page 5. The bankruptcy court noted that the motion was moot since Unit's reorganization plan had been confirmed; post-confirmation, Gilmore's tort action presented "a discharge injunction issue, which would be a totally separate consideration from the stay." *See* Southern District of Texas bankruptcy case number 20-32740 at docket entry 485, page 5.

of bankruptcy. *See* Southern District of Texas bankruptcy case number 20-32740 at docket entry 485, pages 32–33. After the bankruptcy court pointed out that that statement conflicted with earlier testimony in which Hunnicutt "told [the bankruptcy court] that [Hunnicutt] didn't start working on the proof of claim until after July 22nd[,]" Hunnicutt replied that he meant that he told his associate that they needed "to file a motion for relief from the automatic stay." *See* Southern District of Texas bankruptcy case number 20-32740 at docket entry 485, pages 33–34.

> The bankruptcy court then pressed Hunnicutt on the inconsistency:
>
> THE COURT: So that entire explanation all dealt with motions for relief from the stay. So, you understand how problematic this is starting to look?
>
> So let's start over. And I'll remind you that you're under oath. You got a suggestion of bankruptcy some time in June. What did you do?
>
> [HUNNICUTT]: At that time I told an associate to start researching filing a motion for relief from the automatic stay.
>
> THE COURT: Okay. And then?
>
> [HUNNICUTT]: And in my past experience, I knew that we would be receiving something that would give us deadlines for filing them. I didn't realize there was an urgency until we got the deadlines and found out it had already passed.
>
> THE COURT: And so you haven't yet told me that you told—you told me just a minute ago that you issued two instructions to prepare a proof of claim. I still haven't heard the first one yet.
>
> [HUNNICUTT]: And I'm sorry, Your Honor. I'm not a bankruptcy lawyer and I'm misspeaking. When I—

| | |
|---|---|
| THE COURT: | Yeah, I hope that you are an honest lawyer and you understand the meaning of an oath. So far I'm having my doubts. I just want you to know. |
| | So let's start over again. When did you—when did you decide—well, what did you do? You got a suggestion of bankruptcy. All you have to do is spend three minutes on the internet, then you know exactly what the deadlines are.<br>Did you do that? |
| [HUNNICUTT]: | No, I didn't. I asked my associate to start researching what we need to file and I talked to her about how we have to file a motion for relief from an automatic stay. |
| | . . . |
| THE COURT: | All right, so you didn't go look—you didn't go look on the internet to figure out what to do. You told your associate in June to start preparing a motion for relief from the automatic stay. |
| | So, you don't see anything else, you don't follow up with your associate. You don't do anything else for over a month until you see this notice come in on July 22nd, correct? |
| [HUNNICUTT]: | That is correct. |
| THE COURT: | So then on July 22nd, you realized that you made a horrible mistake, correct? |
| [HUNNICUTT]: | Yes, I realized we should have had something on file. |
| THE COURT: | And so, you didn't file anything with me. You decided to file a proof of claim. It took you over a month to do that. That ought to take about 30 minutes. |

*See* Southern District of Texas bankruptcy case number 20-32740 at docket entry 485, pages 34–36.

After that exchange with the bankruptcy court, Hunnicutt admitted on direct examination by Lindauer that he was "concerned" when he learned on July 22, 2020 that

he had missed the General Bar Date. *See* Southern District of Texas bankruptcy case number 20-32740 at docket entry 485, page 46. However, he said that he waited a month to prepare proofs of claim because "in [his] past experience with bankruptcies, none of them had ever moved that fast." *See* Southern District of Texas bankruptcy case number 20-32740 at docket entry 485, page 46. This explanation caused the bankruptcy court to probe further:

> [LINDAUER]: So just to be clear, in your mind you thought that you would have additional time to get your documents on file in these two Unit cases; is that correct?
>
> [HUNNICUTT]: Yes.
>
> THE COURT: So how could you reach that conclusion if had the notice of deadlines giving you dates? How could you possibly conclude that you had more time if the piece of paper you looked at gave you a deadline?
>
> [HUNNICUTT]: I was—I was obviously incorrect, but at the time my past experience with bankruptcy courts, which is limited, there was time to get things on file. Bankruptcies tended to last long times. And I just—I didn't realize our motions needed to be filed that much faster.
>
> THE COURT: Did you read—
>
> [HUNNICUTT]: I have no better answer, Your Honor.
>
> THE COURT: Did you read the document?
>
> [HUNNICUTT]: Yes.
>
> THE COURT: So you knew that there was a deadline?
>
> [HUNNICUTT]: As of July 22nd, yes, Your Honor.

| | |
|---|---|
| THE COURT: | And so you went ahead and filed a motion for lift stay and a proof of claim without—why didn't you file something to me to say, oops, I missed this deadline. I need help. |
| [HUNNICUTT]: | I wish I had done that, Your Honor. I also wish I had hired Ms. Lindauer at that time instead of waiting the additional time for me to hire a bankruptcy lawyer. |
| | I have no—I'm sorry I don't have a better explanation for you. |

*See* Southern District of Texas bankruptcy case number 20-32740 at docket entry 485, pages 46–47.

The bankruptcy court denied Gilmore's motion to allow late-filed proofs of claim, finding that "[i]n this case, there is plenty of neglect. None of it excusable." *See* Southern District of Texas bankruptcy case number 20-32740 at docket entry 485, page 62, and docket entry 494. Gilmore appealed to this Court.

## II. BANKRUPTCY APPEALS AND LATE-FILED PROOFS OF CLAIM

Federal district courts have jurisdiction to hear appeals from the final judgments of bankruptcy judges. 28 U.S.C. § 158(a). An appeal to a district court from the bankruptcy court "shall be taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts[.]" 28 U.S.C. § 158(c)(2). This Court reviews the bankruptcy court's legal conclusions *de novo* but may only disregard a fact finding made by the bankruptcy court if that fact finding is clearly erroneous. *In re Perry*, 345 F.3d 303, 309 (5th Cir. 2003).

A bankruptcy court may extend a bar date and permit a claimant to file a late proof of claim if the claimant's failure to file the proof of claim timely was the result of excusable neglect. *In re Eagle Bus Manufacturing, Inc.*, 62 F.3d 730, 736 (5th Cir. 1995). Four

factors, commonly referred to as the "*Pioneer* factors," guide the excusable-neglect determination; those factors are: (1) the danger of prejudice to the debtor; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith. *Id*. at 737 (citing *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership*, 507 U.S. 380, 395 (1993)). The determination of whether a claimant's neglect of a deadline was excusable is "at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer*, 507 U.S. at 395. "[I]nadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect[.]" *Id*. at 392. "The burden to show excusable neglect is on the movant—i.e., the creditor seeking to file a late claim." *In re CJ Holding Company*, No. 21-20394, 2022 WL 714890, --F.4th-- at *4 (5th Cir. Mar. 10, 2022) (quotation marks omitted).

On appeal, a bankruptcy court's refusal to allow a late-filed claim is reviewed for abuse of discretion. *Id*. The Fifth Circuit recently described the standard of review as "exceptionally deferential[.]" *Id*. at *11; *see also In re Enron Corp.*, 419 F.3d 115, 129 (2d Cir. 2005) (quoted in *In re CJ*) ("[W]e are particularly reluctant—absent evident arbitrariness—to substitute our judgment for that of the bankruptcy judge who has presided over the proceedings[ ] [and] who is most familiar with the parties and the potential impact of any late-filed claim[.]").

### III. THE BANKRUPTCY COURT DID NOT ABUSE ITS DISCRETION.

Having examined the record in light of the *Pioneer* factors, the Court concludes that the bankruptcy court did not abuse its discretion when it denied Gilmore's motion to allow late-filed proofs of claim.

—*Danger of prejudice to the debtor*

The bankruptcy court's conclusion that the first *Pioneer* factor favors Unit was not an abuse of discretion.

In its recent *In re CJ* opinion, the Fifth Circuit, in holding that the first *Pioneer* factor favored the claimants who sought to file late proofs of claim, highlighted that: (1) the bankruptcy debtors had notice of the claimants' claims prior to the negotiation and confirmation of the debtors' reorganization plan; (2) although the bankruptcy debtors had preserved their objections to the claimants' late proofs of claim, the debtors had participated in a global mediation after the bar date that included the claimants' claims; and (3) the debtors' reorganization plan included a disputed claims reserve, "which was calculated at least partly based on the amount of [the claimants' claims,]" that "mitigate[d] against the risk" of unexpected losses caused by the late claims. *In re CJ*, 2022 WL 714890 at *5. The Fifth Circuit concluded that those facts suggested that, "at a minimum," the bankruptcy debtors "recognized the existence of [the claimants'] claims and the possibility that they might ultimately be allowed in the bankruptcy proceeding." *Id*.

Some of the facts emphasized by the Fifth Circuit in *In re CJ* are also present here. As discussed above, Gilmore's claims were litigated extensively in Texas state court before Unit filed for bankruptcy, so there does not seem to be any question that Unit was aware

of Gilmore's claims before its reorganization plan was negotiated and confirmed. Additionally, Unit's reorganization plan required Unit to establish a disputed claims reserve funded by equity securities in one of the reorganized entities. *See* Southern District of Texas bankruptcy case number 20-32740 at docket entry 340, pages 91, 153–56.

However, there are key differences between the two cases. Unlike in *In re CJ*, there was no negotiation after the General Bar Date involving Gilmore's claim; to the contrary, Gilmore asserts in his papers that Unit "never reached out to Gilmore as part of [the] negotiations" between Unit and its "largest secured and unsecured creditors[.]" (Dkt. 16 at p. 9). Moreover, Gilmore has not pointed to any evidence showing that Unit's disputed claims reserve was calculated to any extent based on the amount of Gilmore's claim. These differences tilt the prejudice factor in favor of Unit.

Even though Unit knew about Gilmore's claims before its reorganization plan was negotiated and confirmed, there is no indication in the record that Unit recognized the possibility that Gilmore's claims might ultimately be allowed in the bankruptcy proceeding despite Gilmore's failure to file a timely proof of claim. *Cf. id.* Accordingly, excusing Gilmore's failure to file a timely proof of claim would prejudice Unit by "tend[ing] to undermine the process of distinguishing between asserted and unasserted claims by requiring creditors to submit proofs of claim in order to participate in the bankruptcy reorganization." *In re ASARCO, LLC*, No. 05-21207, 2008 WL 4533733, at *3 (S.D. Tex. Oct. 3, 2008) (quotation marks omitted) (quoting *In re Enron*, 419 F.3d at 131).

The bankruptcy court did not abuse its discretion with regard to the first factor.

*—Length of the delay and its potential impact on judicial proceedings*

The bankruptcy court's conclusion that the second *Pioneer* factor favors Unit was not an abuse of discretion.

The length of time between July 17, 2020 (the General Bar Date) and September 25, 2020 (the date on which Gilmore filed his motion to allow late-filed proofs of claim) was 70 days. The *In re CJ* opinion approvingly listed several cases in which courts denied motions for leave to file late proofs of claim after delays of similar length. *See In re CJ*, 2022 WL 714890 at *6; *see also In re DLH Master Land Holding, L.L.C.*, 464 Fed. App'x 316, 318–19 (5th Cir. 2012) (upholding denial of motion for leave to file proof of claim 42 days late); *In re ASARCO*, 2008 WL 4533733, at *1, 3 (denying motion for leave to file proof of claim 70 days after the supplemental bar date); *In re KMart Corp.*, 381 F.3d 709, 714 (7th Cir. 2004) (affirming denial of motion to allow late-filed claim when proof of claim was only one day late but claimant did not file motion until 81 days after bar date).

Furthermore, provisions in Unit's reorganization plan indicate that allowing Gilmore's claims would disrupt the administration of Unit's bankruptcy. As was the case in *In re CJ*, Unit's confirmed reorganization plan contained language explicitly disallowing and expunging "[a]ny Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed, and for which no Proof of Claim is or has been timely Filed[.]" *See* Southern District of Texas bankruptcy case number 20-32740 at docket entry 340, page 83. That language supports the conclusion that Unit's "notice of the general existence of [Gilmore's] claims pre-Plan confirmation does not mean that [Unit] expected to have to resolve those claims even if they were filed *late.* [Unit's] Plan contained specific

provisions protecting [Unit] from having to do just that." *In re CJ*, 2022 WL 714890 at *6 (emphasis in original).

Finally, the record "permits the reasonable inference that the delay that would result from allowing [Gilmore's claims] to proceed could significantly impact the resolution of [Unit's] bankruptcy." *Id*. at *7. Gilmore's claims, after an appellate reversal of a jury verdict in Gilmore's favor, were awaiting retrial in Texas state court when Unit filed for bankruptcy protection. The appellate decision in Gilmore's case was issued two-and-a-half years after the jury reached its verdict. *See Gilmore*, 2019 WL 5089763 at *2. Factoring in the possibility of another appeal after the retrial, permitting Gilmore to file late proofs of claim could add months or even years to the administration of Unit's bankruptcy. *Cf. In re CJ*, 2022 WL 714890 at *7 ("[P]ermitting the Claimants to file late proofs of claim could add, at a minimum, two to three months to the wage litigation and bankruptcy. And the Debtors . . . claim that it could take *years* to conclude the additional arbitrations and close out the wage litigation and the bankruptcy.").

The bankruptcy court did not abuse its discretion with regard to the second factor.

—*Reason for the delay*

The bankruptcy court's conclusion that the third *Pioneer* factor favors Unit was not an abuse of discretion. "In considering this factor, courts are less likely to find excusable neglect when the reason for the delay was within the movant's reasonable control." *Id*. at *8; *see also In re ValuePart, Inc.*, 802 Fed. App'x 143, 148 (5th Cir. 2020) ("[The claimant] has not shown that [the reason for the delay] was based on factors akin to incarceration or

ill health."). "[I]nadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect[.]" *Pioneer*, 507 U.S. at 392.

The bankruptcy court did not clearly err in finding that the reason for Gilmore's failure to file his proof of claim before the General Bar Date was within Gilmore's reasonable control. Even though Hunnicutt did not receive the mailed notice of the General Bar Date until July 22, 2020, which was five days after the General Bar Date, both Hunnicutt and Gilmore knew about Unit's bankruptcy well before that. Hunnicutt learned about Unit's bankruptcy on June 5, 2020 and testified that he told Gilmore about the bankruptcy "shortly after June 5th when [Hunnicutt] would have received the State Court filing of a suggestion of bankruptcy."[4] *See* Southern District of Texas bankruptcy case number 20-32740 at docket entry 485, pages 32–33, 48.

Since Hunnicutt and Gilmore knew about the bankruptcy well in advance of the General Bar Date, the record makes clear that the central reason for Gilmore's missing the General Bar Date was Hunnicutt's mistaken belief, based on his "past experience," that he did not need to take any action to apprise himself of the General Bar Date because he "would be receiving something that would give us deadlines for filing" motions in Unit's bankruptcy. *See* Southern District of Texas bankruptcy case number 20-32740 at docket

---

[4] This testimony refutes Gilmore's argument that Hunnicutt's notice of Unit's bankruptcy cannot be imputed to Gilmore because Hunnicutt "does not practice bankruptcy and Gilmore obtained bankruptcy counsel after the claims bar date had passed." (Dkt. 8 at p. 23; Dkt. 16 at pp. 11–14). In this testimony, Hunnicutt said that he told Gilmore about Unit's bankruptcy shortly after June 5, 2020. Moreover, in Unit's bankruptcy, Hunnicutt signed proofs of claim and a motion for relief from the automatic bankruptcy stay as counsel for Gilmore. Accordingly, Gilmore's notice argument does not establish that the bankruptcy court abused its discretion.

entry 485, page 48. Hunnicutt admitted that he did not check the bankruptcy court's docket when he received the suggestion of bankruptcy and that he took no action to apprise himself of the General Bar Date until he received the mailed notice on July 22, 2020, at which point he "realized that we should have had something on file." *See* Southern District of Texas bankruptcy case number 20-32740 at docket entry 485, pages 35–36.

Gilmore argues in his briefing to this Court that the bankruptcy court erred "in suggesting that Hunnicutt was on notice of the [General Bar Date] because of the Suggestion of Bankruptcy[.]" (Dkt. 8 at p. 21). The Court disagrees. Fifth Circuit precedent advises that:

> [w]hen the holder of a large, unsecured claim receives any notice that its debtor has initiated bankruptcy proceedings, it is under constructive or inquiry notice that its claim may be affected, and it ignores the proceedings to which the notice refers at its peril. Whatever is notice enough to excite attention and put the party on his guard and call for inquiry, is notice of everything to which such inquiry may have led. When a person has sufficient information to lead him to a fact, he shall be deemed to be conversant of it. *Robbins v. Amoco Production Co.*, 952 F.2d 901, 908 (5th Cir. 1992) (ellipses and quotation marks omitted) (quoting *In re Gregory*, 705 F.2d 1118, 1123 (9th Cir. 1983)).

In line with those general principles, the Fifth Circuit, in a case very similar to this one, affirmed the conclusion that a claim was time-barred, despite the claimant's learning about the applicable bar date after that date had passed, because the claimant had learned about the debtor's bankruptcy 18 days before the bar date. *In re Sam*, 894 F.2d 778, 781–82 (5th Cir. 1990) ("When Grossie received the Notice of Automatic Stay eighteen days prior to the bar date, he was on notice that his section 1983 claim against Sam was affected by Sam's bankruptcy, and he had eighteen days to inquire as to the bar date and file his

complaint or a motion to extend the bar date."); *see also In re Christopher*, 28 F.3d 512, 518 (5th Cir. 1994) ("We concluded that [the notice in *In re Sam*] was constitutionally sufficient for two reasons: (1) the notice apprised the claimant of the pendency of the action, and (2) it was sufficiently timely to permit the claimant to present his objections.").

The bankruptcy court did not err in concluding that Fifth Circuit law required Gilmore to take steps to ascertain the General Bar Date when he learned about Unit's bankruptcy. The Court further notes that, even after he learned that the General Bar Date had passed, Gilmore waited 65 days to file his motion to allow a late-filed proof of claim. When testifying about the 65-day delay, Hunnicutt explained that he "didn't realize our motions needed to be filed that much faster" because, in his experience, "[b]ankruptcies tended to last long times." *See* Southern District of Texas bankruptcy case number 20-32740 at docket entry 485, page 46. Hunnicutt's explanations for the additional 65-day delay bespeak nothing more than inadvertence or ignorance of bankruptcy procedure. The bankruptcy court accordingly did not err in concluding that the reason for the additional 65-day delay was also within Gilmore's reasonable control.

The bankruptcy court did not abuse its discretion with regard to the third factor.

—*Good faith*

The bankruptcy court's conclusion that the fourth *Pioneer* factor favors Unit was not an abuse of discretion. The bankruptcy court justifiably concluded that Gilmore failed to act diligently. While lack of diligence does not constitute "bad faith *per se*[,]" it "certainly does not do [Gilmore] any favors for purposes of meeting [his] burden to show good faith." *In re CJ*, 2022 WL 714890 at *10.

Even though he learned of Unit's bankruptcy on June 5, 2020, Gilmore took no action to ascertain the General Bar Date until he received the mailed notice on July 22, 2020. Relying on a Tenth Circuit case, *Reliable Electric Co. v. Olson Construction Co.*, 726 F.2d 620 (10th Cir. 1984), Gilmore justifies his inaction by arguing that "a creditor, who has general knowledge of a debtor's reorganization proceeding, has no duty to inquire about further court action" and "has a 'right to assume' that he will receive all of the notices required by statute before his claim is forever barred." (Dkt. 8 at p. 22). The Fifth Circuit, however, has not followed *Reliable*; and the Fifth Circuit's *In re Sam* opinion is impossible to distinguish from this case. *See In re Christopher*, 28 F.3d at 517–18 (analyzing both *Reliable* and *In re Sam*). Gilmore's reliance on out-of-circuit law that conflicts with Fifth Circuit law further undermines his argument that he acted in good faith. *In re CJ*, 2022 WL 714890 at *10 ("Such is not settled law in this Circuit, and the Claimants' reliance on unsettled law casts serious doubt on their claim of good faith.").

The bankruptcy court did not abuse its discretion with regard to the fourth factor.

IV. **CONCLUSION**

The Court **AFFIRMS** the bankruptcy court's judgment. The bankruptcy court did not abuse its discretion when it denied Gilmore's motion to allow late-filed proofs of claim.

SIGNED at Houston, Texas, on March 30, 2022.

*George C. Hanks Jr.*
GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE